UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EARL DEAN CHRISTIAN, JR., | No. 2:21-cv-0305 KJN P |
| Plaintiff, | |
| v. | ORDER AND |
| H. MACIAS, et al., | FINDINGS & RECOMMENDATIONS |
| Defendants. | |

This action proceeds through decedent Earl Dean Christian Jr.'s daughter and successor in interest Katelyn Christian, who is represented by counsel. In this civil rights action brought under 42 U.S.C. § 1983, plaintiff alleges that defendants used excessive force. Defendants' fully briefed motion for summary judgment on exhaustion grounds is before the court. As set forth below, it is recommended that the motion for summary judgment be denied.

I. Background

On December 16, 2022, defendants Hernandez, Hickman, Macias, and Feltner filed a motion for summary judgment on the grounds that plaintiff failed to exhaust his administrative remedies prior to bringing the instant action. (ECF No. 51.) On February 16, 2023, plaintiff filed an opposition. (ECF No. 54.) On February 27, 2023, defendants filed a reply. (ECF No. 55.)

On April 13, 2023, counsel for plaintiff filed a suggestion of death of plaintiff Earl Dean Christian, Jr., who died on April 12, 2023. (ECF No. 56.) On July 6, 2023, plaintiff Earl Dean

Christian, Jr.'s successor, daughter Katelyn Christian, filed a motion to substitute herself for Mr. Christian. (ECF No. 58.) The motion for substitution was granted on August 7, 2023. (ECF No. 63.)

## II. Plaintiff's Second Amended Complaint

Plaintiff alleges that on or about May 25, 2018, on the yard at Mule Creek State Prison, a fight broke out which escalated into a riot. Plaintiff and over a dozen other inmates were drawn into the riot. Defendants ordered the inmates to drop to the ground and stop fighting; as plaintiff attempted to comply, he was shot three times by defendants: in the leg, shoulder and hip. Plaintiff fell to the ground in a prone position away from the other inmates involved in the riot. Despite such position, defendants continued to fire shots toward plaintiff. One of those shots hit plaintiff in the head causing traumatic and debilitating brain injuries requiring extensive inpatient medical treatment at Queen of the Valley Medical Center. (ECF No. 30 at 3.) Plaintiff sues H. Macias, B. Hernandez, J. Hickman, and J. Feltner, all correctional officers at Mule Creek State Prison, for the use of excessive force in violation of the Eighth Amendment. Plaintiff also names Does 1 - 10. Plaintiff seeks compensatory and punitive money damages, costs of suit, and attorney's fees.

## III. Summary Judgment

### A. Legal Standards for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil Procedure 56 is met. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c).) "Where the nonmoving party bears the burden of proof at trial, the moving party need

only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 Advisory Committee Notes to 2010 Amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce

the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

B. Facts[1]

1. During all relevant times, plaintiff was an inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR"); at the time of the incident at issue, plaintiff was housed at Mule Creek State Prison ("MCSP").

2. Defendants Hernandez, Hickman, Macias, and Feltner were employed as correctional officers at MCSP at all relevant times.

3. On May 25, 2018, plaintiff was drawn into a riot.

4. Plaintiff claims he was shot several times with rubber rounds. Then, as he was attempting to comply with the order to drop to the prone position, he was shot in the head with a rubber round.

////

---

[1] The undersigned finds these facts undisputed for purposes of summary judgment, unless otherwise noted.

5. Plaintiff does not know which of the defendants shot him in the head. However, he asserts that the decision to continue shooting towards him after he was on the ground violated his Eighth Amendment right to be free from the use of unreasonable force.

6. Plaintiff checked the boxes on his complaint acknowledging his awareness of the grievance procedure, and the need to exhaust the grievance procedure.

7. Plaintiff timely submitted Appeal MCSP-18-02395 in which plaintiff identified the subject of his appeal as "injury to head, shot in head," and claimed he was shot in the head by the block gun, was put in the hospital, and the left side of his body was and is paralyzed.[2] (ECF No. 51-3 at 13.) Plaintiff stated that he wanted to be paid for his injuries. (Id.)

8. The appeals coordinator at MCSP bypassed Appeal MCSP-18-02395 at the first level.

9. On June 13, 2018, plaintiff's staff complaint was sent to Warden Joe Lizarraga by memo.[3] (ECF No. 51-3 at 8.) On June 18, 2018, hiring authority B. Holmes referred the complaint to the Office of Internal Affairs ("OIA") for "investigation/notification of direct adverse action (reasonable belief misconduct occurred and adverse action likely)." (ECF No. 51-3 at 8.) On June 21, 2018, plaintiff was separately notified that Appeal MCSP-18-02395 was sent to staff for second level response. (ECF No. 51-3 at 28.)

10. Appeal MCSP-18-02395 was accepted for second level review and assigned on June 21, 2018, with a due date of July 24, 2018. (ECF No. 51-3 at 14.) However, those dates are crossed out, and a new assignment date of July 2, 2018, and due date of August 14, 2018, were handwritten by an unidentified staff member. (ECF No. 51-3 at 14.).

11. Plaintiff arrived at California Health Care Facility ("CHCF") on June 22, 2018, where he was housed in the correctional treatment center. (ECF No. 51-3 at 16, 42.)

12. On July 11, 2018 Warden Joe Lizarraga granted Appeal MCSP-18-02395 in part at the second level because it was referred to the OIA "for review and possible investigation" to

---

[2] Defendants claim plaintiff submitted Appeal MCSP-18-02395 on June 21, 2018. However, the June 13, 2018 memo to Warden Lizarraga confirms that the appeal was received June 11, 2018. (ECF No. 51-3 at 8.) In any event, defendants do not argue that the initial appeal was untimely.

[3] The Memo bears the subject "Determination of Staff Complaint," and is stamped "Confidential Staff Complaint." (ECF No. 51-3 at 8.)

determine if correctional staff violated policy.  (ECF No. 51-2 at 11.)  Such appeal form confirms the second level response was provided to plaintiff (either by mail or delivery) on July 13, 2018.  (ECF No. 51-3 at 14.)

13.  On July 20, 2018, plaintiff filed a separate grievance (CHCF-18-02806) complaining that his property did not follow him to CHCF and was told that the property was lost.  (ECF No. 51-3 at 17.)  On July 26, 2018, plaintiff was informed that the grievance was forwarded to MCSP for review and processing.  (ECF No. 51-3 at 18, 19.)

14.  On August 21, 2018, plaintiff was moved to the CHCF out-patient housing unit.  (ECF No. 51-3 at 42.)

15.  On August 25, 2018, plaintiff signed his request for third level review of Appeal MCSP-18-02395.[4]  (ECF No. 51-2 at 10.)  A note on the appeal suggests plaintiff initially sent the request to the wrong address.[5]  An envelope addressed to the Chief, Inmate Appeals Branch, and bearing plaintiff's return address contains the handwriting:  "legal mail confidential sent August 28, 2018."  (ECF No. 51-2 at 13.)

16.  The Office of Appeals ("OOA") received Appeal MCSP-18-02395 on September 4, 2018.  (ECF No. 51-2 at 9).

17.  On October 28, 2018, plaintiff sent a letter to the CDCR in which he stated:

> I have been waiting for a few months to receive the 3rd level log # above in order to file my case and so far I've not received it.  Therefore, I am filing my case today because there are time constraints and I want to be sure I don't violate the 30 day grace period at the 602's appeals coordinator.

(ECF No. 54-1 at 14.)

////

---

[4]  Appeal MCSP-18-02395 is appended to the Moseley Declaration.  (ECF No. 51-2 at 8-18.)  In the response to undisputed statement of facts, plaintiff's counsel states that plaintiff did not appeal the second level decision because his appeal was granted in part at the second level of review on July 11, 2018, and referred for further investigation at the third level of review.  (ECF No. 54-3 at 6.)  However, such argument is not included in plaintiff's opposition, and the record confirms that plaintiff sought third level review.  (ECF No. 51-2 at 10.)

[5]  This note obscures a portion of the third level review box such that it cannot be determined if the box was completed.  (ECF No. 51-2 at 10.)

6

18. On October 29, 2018, plaintiff submitted a follow-up Form 602 (assigned MCSP-18-04622):

> I recently moved from MCSP to CHCF and I would like to have a copy of my . . . one third level and one second level copy of the appeal to complete my third level and 2nd level 602 from M.C.S.P. The third level is taking longer than I thought, there are time constraints. Please send the 602s as soon as possible. Thank you.

(ECF No. 54-1 at 16-17.)

19. Grievance MCSP-18-04622 was returned to plaintiff advising him to contact the OOA directly. (ECF No. 51-3 at 21.)

20. On November 14, 2018, the OOA wrote to plaintiff stating: "The attached page(s) lists a summary of your recent appeal history and status of appeals still under review." (ECF No. 51-3 at 31.)[6] The attached form confirmed that the OOA had no history of accepted appeals or screened out appeals for plaintiff. (ECF No. 51-3 at 30.)

21. On November 19, 2018, plaintiff submitted another follow-up Form 602, assigned MCSP-18-05228:

> Mr. Appeals Coordinator: this 602 is filed for the intention of insuring my third level response 602 is received by your office. Enclosed you will find copies of documents indicating I did file timely to first level and second level. However, my third level appeal is either pending or got lost in the mail or misplaced.

(ECF No. 54-1 at 19.)[7]

22. Plaintiff received a letter from the OOA dated December 6, 2018 that stated:

> This is in response to correspondence, received October 29, 2018, wherein you request that this office send appeal Log MCSP-18-02395 so that you may correct other records.

---

[6] This November 14, 2018 memo does not bear an appeal number, and although appended to the Fletes Declaration (ECF No. 51-3 at 31), is not mentioned in Fletes' declaration (ECF No. 51-3 at 1-6), or addressed by the parties (ECF Nos. 51, 54-1, 54-3, 54-4, 55, 55-1).

[7] In the reply, defendants recited a timeline of plaintiff's contacts with administrative appeals officials, and as to plaintiff's Appeal 18-5228 claimed such appeal restarted the administrative process, giving the OOA another 60 days to respond. (ECF No. 55 at 2:14-15.) However, counsel cited no authority in support. Defendants did not make this assertion in their motion or argue this point further in their reply. Moreover, the OOA wasn't provided plaintiff's Appeal 18-5228; plaintiff was told to contact OOA directly by the MCSP appeals coordinator. Thus, it is unclear how Appeal 18-5228 had any impact on plaintiff's Appeal-18-2395.

7

> If an appeal is accepted, the Third Level Review is attached to the appeal documentation and returned to the appellants. If an appeal is not accepted, a rejection letter, explaining the reason that the appeal did not qualify for processing at the Third Level of Review, is attached to the appeal packet and returned to the appellant. The attached report includes appeals that have been screened and either accepted, rejected, or cancelled at the Third Level of Review. Correspondence does not constitute a formal appeal submission.

(ECF No. 54-1 at 22.)[8]

23. The OOA's December 6, 2018 letter attached a copy of a form that purported to reflect plaintiff's appeal history. The form stated that "[t]he appellant has no accepted appeal history" and "no screened out appeal history." (ECF No. 54-1 at 23.)

24. On December 13, 2018, the OOA rejected Appeal MCSP-18-02395 pursuant to California Code of Regulations ("CCR") title 15, Section 3084.6(b)(7), stating the appeal "is missing necessary supporting documents as established in CCR 3084.3." (ECF No. 51-2 at 8.) Specifically, plaintiff's appeal was missing: "• CDCR Form 1858, Rights and Responsibilities [sic] Statement." (Id.) The letter was addressed to plaintiff at the CHCF and contained his inmate identification number.

25. On December 27, 2018, plaintiff was provided a first level screening of Appeal MCSP-18-05228,[9] and "advised this appeal issue should be submitted to the appropriate CDCR unit for review;" confirmed plaintiff's Appeal MCSP-18-02395 was completed at the second level of review, but informed plaintiff that MCSP Appeal office staff had no knowledge of how or when plaintiff forwarded his appeal to the OOA for third level review. (ECF No. 51-3 at 25.) Plaintiff was directed to contact the OOA directly. (Id.)

////

---

[8] At the bottom of this memo is typed: "MCSP-0-18-04622." (Id.) However, the font of this typewritten appeal number does not match the font of the memo.

[9] Defendants claim that the OOA received Appeal MCSP-18-05228 on December 11, 2018, and on December 27, 2018 plaintiff was notified by the second level reviewer as to the status of MCSP-18-05228. (ECF No. 55 at 2 (emphasis added).) However, the Fletes' declaration does not so confirm, the form is labeled "Screening at the FIRST level," and Appeal MCSP-18-05228 bears no OOA indicia of receipt (ECF No. 51-3 at 25-27). Rather, such appeal was screened out by the MCSP appeals coordinator. (Id.)

26. The OOA has no record of plaintiff resubmitting MCSP-18-02395 with the Rights and Responsibility Statement.

27. After the incident underlying this litigation, plaintiff participated in the submission of two group appeals but such appeals had nothing to do with being shot or the unlawful use of force during the riot on May 25, 2018. (ECF No. 51-2 at 3 (¶ 11); 20-53.)

28. Plaintiff declares he has no recollection of receiving the December 13, 2018 rejection, did not find the rejection in his property, and that if he had received the rejection, he would have promptly completed and submitted the Statement. (ECF No. 54-1 at 3 (Pl.'s Decl. ¶ 10.) Defendants dispute plaintiff's claim that he did not receive the December 13, 2018 notice because they mailed it to his current address. (ECF No. 55-1 at 3.)

C. Exhaustion Standards

The Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.§ 1997e(a). There is no "special circumstances" exception to the PLRA's rule of exhaustion prior to filing "any action." Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006); Jones v. Bock, 549 U.S. 199, 211 (2007)).

However, the PLRA provides one textual exception by using the term "available," meaning "'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" Ross, 578 U.S. at 642 (quoting Booth v. Churner, 532 U.S. 731, 737-38 (2001). The Supreme Court found "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 578 U.S. at 643-44. Such circumstances are: "(1) when the administrative procedure 'operates as a simple dead end' because officers are 'unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when the administrative scheme is 'so opaque that it becomes, practically speaking, incapable of use' because 'no ordinary prisoner can discern or navigate it'; and (3) when prison administrators 'thwart inmates from taking advantage of a grievance process through

machination, misrepresentation, or intimidation.'" Andres v. Marshall, 867 F.3d 1076, 1078 (9th Cir. 2017) (quoting Ross, 578 U.S. at 643-44).

The Ninth Circuit characterized the list in Ross as "non-exhaustive," stating that "the PLRA does not require exhaustion when circumstances render administrative remedies effectively unavailable." Andres, 867 F.3d at 1078 (internal quotations and citation omitted). "When prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies." Id. See also Reyes v. Smith, 810 F.3d 654, 658, 659 (9th Cir. 2016) (despite failure to identify specific doctors, prisoner's grievance plainly put prison on notice that he was complaining about the denial of pain medication by the defendant doctors, and prison officials easily identified the role of pain management committee's involvement in the decision-making process); McBride v. Lopez, 807 F.3d 982, 987 (9th Cir. 2015) ("the threat of retaliation for reporting an incident can render the prison grievance process effectively unavailable."); Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010) (administrative remedies plainly unavailable if grievance was screened out for improper reasons); Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010) ("the Warden's mistake rendered Nunez's administrative remedies effectively unavailable, and . . . his failure to exhaust them is excused.").

For exhaustion to be "proper," a prisoner must comply with the prison's procedural rules, including deadlines, as a precondition to bringing suit in federal court. Woodford, 548 U.S. at 90 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218.

"Nonexhaustion" is "an affirmative defense" and defendants have the burden of "prov[ing] that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino v. Baca, 747 F.3d 1162, 1171-72 (9th Cir. 2014). A remedy is "available" where it is "capable of use; at hand." Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting Albino, 747 F.3d at 1171). Grievance procedures that do not allow for all types of relief sought are still "available" as long as the procedures may afford "some relief." Booth v. Churner, 532 U.S. 731, 738 (2001). If a defendant meets the initial burden, a

plaintiff then must "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino, 747 F.3d at 1172. Remedies are "effectively unavailable" where they are "ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." Id. (quoting Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996)). "[T]he ultimate burden of proof," remains with the defendants. Albino, 747 F.3d at 1172-73. Only "[i]f the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, [is] a defendant is entitled to summary judgment under Rule 56." Albino, 747 F.3d at 1166.

### D. California's Inmate Appeal Process[10]

The State of California provides its inmates and parolees the right to administratively appeal ''any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare.'' Cal. Code Regs. tit. 15, § 3084.1(a). California prisoners are required to lodge their administrative complaint on a CDCR-602 form, which instructs the inmate to explain the issue and set forth the action requested.

In 2018, there were three formal levels of appeal review. All appeals were required to be initially filed and screened at the first level unless the first level was otherwise waived. The appeals coordinator was permitted to bypass the first level for various reasons outlined under Section 3084.7.

In May of 2018, an inmate had 30 calendar days to submit an appeal from the date of event or decision being appealed, upon first having knowledge of the action or decision being appealed, or upon receiving an unsatisfactory departmental response to an appeal filed. Cal. Code Regs. tit. 15, § 3084.8(b)(1)-(3). The amount of detail in an administrative grievance necessary to

---

[10] In 2020, California changed the grievance system from a three-level system to a two-level system. That change was effective June 1, 2020, after plaintiff submitted relevant appeals in the instant case. See Cal. Code Regs. tit. 15, § 3480. All citations to the California code in the text herein refer to the prior law, which can be found here: https://www.cdcr.ca.gov/regulations/wp-content/uploads/sites/171/2020/04/Master-File-Appeals-Emerg-Regs_ADA.pdf. (California Code of Regulations, title 15, sections 3084 through 3084.9 were repealed, and replaced and renumbered with amended sections 3480 through 3487.)

11

properly exhaust a claim is determined by the prison's applicable grievance procedures. Jones, 549 U.S. at 218; see also Sapp, 623 F.3d at 824 (''To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations''). In California, the prisoner was required to describe the adverse action or decision being appealed, the relief requested; "list all staff member(s) involved and [] describe their involvement in the issue" and if unknown, "provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question" and to state all facts known and available to [him] regarding the issue being appealed. CCR tit. 15, § 3084.2(a)(3-4).

Administrative procedures generally are exhausted once a plaintiff has received a "Director's Level Decision," or third level review, with respect to the issues or claims. Id. § 3084.1(b). Responses at the third level of review were to "be completed within 60 working days from the date of receipt by the third level Appeals Chief," excluding certain exceptions not applicable here. Id., § 3084.8(c)(3).

E. The Parties' Arguments

1. The Motion

Defendants contend that this action should be dismissed because plaintiff failed to exhaust his administrative remedies through the third level of review. The OOA sent plaintiff a letter advising him that the third level appeal was missing the "CDCR Form 1858 Rights and Responsibilities [sic] Statement," and both MCSP and the OOA had no record that plaintiff sent the required form back to the OOA within thirty days. Defendants argue that the record demonstrates plaintiff was aware of administrative appeal procedures, having submitted his initial appeal after the incident, and having been involved in group appeals after the riot. Further, all plaintiff had to do to cure the issue was to submit the Rights and Responsibility Statement, which he did not do.

2. Plaintiff's Opposition

In opposition, plaintiff contends that because he did not receive the notice that the OOA had screened out his appeal, his administrative remedies were effectively unavailable. In support, plaintiff points to the multiple inquiries he submitted concerning the status of his third level

appeal. Indeed, in December of 2018, plaintiff received a letter from the OOA attaching a print-out of his appeal status which reflected that plaintiff had no accepted or screened out appeals. Plaintiff contends his numerous requests for status demonstrate that had he received the OOA's letter concerning the missing form, plaintiff would have completed and returned the form.

Further, even if plaintiff's request for third level review was technically deficient, Appeal MCSP-18-02395 sufficed to inform prison officials of the nature of his grievance and the facts underlying his claim. (ECF No. 54 at 4-5) (citing Sapp, 623 F.3d at 824; Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009) ("[A] grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.").) Plaintiff points out that defendants do not dispute that plaintiff's grievance sufficed to inform them of the nature of his complaint or provide any reason why the alleged failure to provide the statement prevented them from investigating and addressing plaintiff's grievance on the merits. Such technical failure does not support a finding plaintiff failed to exhaust his administrative remedies.

### 3. Defendants' Reply

In reply, defendants contend that plaintiff's assertion that he did not receive OOA's rejection letter is contradicted by his earlier behavior. Plaintiff was in continuous contact with OOA between September 2018 and December 2018; in November of 2018 he threatened to, but did not file, the original complaint. After the OOA issued its rejection, all communication from plaintiff to the OOA ceased. Plaintiff does not state he was not housed at CHCF where the rejection notice was mailed. Further, plaintiff's claim that "he has no recollection of receiving any notice" does not unequivocally state he did not receive the notice. Plaintiff sent no further inquiries and then waited 18 months before filing the instant action. Meanwhile, plaintiff continued to use the administrative appeals process, participating in two group appeals that reached the third level of review. Defendants note that several of plaintiff's subsequent appeals were rejected because he failed to follow proper procedures. (ECF No. 55 at 4.)

Further, defendants point out that it is the prison's requirements that dictate the boundaries of proper exhaustion. (ECF No. 55 at 4-5) (citing, inter alia, Reyes, 810 F.3d at 657) (quoting Jones, 549 U.S. at 218); Fuqua v. Ryan, 890 F.3d 838, 845 (9th Cir. 2018).) The CDCR requires

that inmates submitting staff complaints sign a Rights and Responsibility Statement which puts inmates on notice that they have a right to a written description of the procedures used to investigate the complaint, and that the CDCR is required to retain the complaint and the investigation results for five years. Because Appeal MCSP-18-02395 was a complaint against staff for the wrongful use of force, plaintiff was required to include the form under Cal. Code Regs., tit. 15 § 3084.9(i), but did not. Despite being given an opportunity to rectify the omission, plaintiff failed to do so.

Defendants argue that summary judgment should be entered, and the case dismissed based on plaintiff's failure to exhaust, but to the extent the court determines otherwise, defendants request a hearing under Albino v. Baca, 697 F.3d 1023 (9th Cir. 2012), on reh'g en banc, 747 F.3d 1162 (9th Cir. 2014). (ECF No. 55 at 5.)

F. Discussion

1. Did Plaintiff Exhaust?

It is undisputed that at the time plaintiff was pursuing Appeal MCSP-18-02395, the CDCR generally had a grievance process that plaintiff used to obtain first and second level review decisions, and participated in group appeals through the third level of review. It is undisputed that although plaintiff timely submitted a request for third level review of Appeal MCSP-18-02395, OOA records reflect that plaintiff failed to provide a Rights and Responsibility Statement. "[A]ny appeal alleging misconduct by a departmental peace officer as defined in subsection 3291(b) shall be accompanied by the subsection 3391(d) Rights and Responsibility Statement." CCR tit. 15, § 3084.9(i).[11]

---

[11] The Section 3391(d)/Form 1858 "Rights and Responsibility Statement" provides:

> You have the right to make a complaint against a police officer [this includes a departmental peace officer] for any improper police [or peace] officer conduct. California law requires this agency to have a procedure to investigate citizen's [or inmates'/parolees'] complaints. You have a right to a written description of this procedure. This agency may find after an investigation that there is not enough evidence to warrant action on your complaint; even if that is the case, you have the right to make the complaint and have it investigated if you believe an officer behaved improperly. Citizen [or inmate/parolee] complaints and any reports or findings relating to

Indeed, at least two district courts have granted summary judgment based on the prisoner's failure to timely correct the failure to provide the Rights and Responsibility Statement. See Draper v. Garcia, 2017 WL 2189751, at *2 (E.D. Cal. May 18, 2017) (granting defendant's motion for summary judgment where prisoner failed to attach Rights and Responsibility Statement with third level appeal and did not resubmit said appeal in a timely manner), findings and recommendations adopted, 2:16-cv-1917 GEB CKD P (E.D. Cal.), subsequently aff'd, 741 F. App'x 414 (9th Cir. 2018) (unpublished); Hanson v. Jamerson, 2019 WL 1220771, at *8 (S.D. Cal. Mar. 15, 2019) (prisoner failed to timely re-submit appeal for third level review after appeal rejected for failure to attach a Rights and Responsibility Statement), report and recommendation adopted, 2019 WL 2089507 (S.D. Cal. May 13, 2019).  However, in both Draper and Hanson, neither prisoner claimed he did not receive the rejection or cancellation notice that the Rights and Responsibility Statement had not been received, or that the notice was untimely.  Id.

Here, plaintiff declares he has no recollection of receiving the December 13, 2018 rejection, did not find the rejection in his property, and that if he had received the rejection, he would have promptly completed and submitted the statement.  Defendants dispute that plaintiff did not receive the rejection because the notice was properly addressed to plaintiff at CHCF and argue that plaintiff's failure to follow up with OOA in December 2018 and later demonstrates that plaintiff chose not to file the statement.

Ordinarily, the court would hold a hearing under Albino, 747 F.3d 1152, so that the court could resolve whether plaintiff received the rejection and address any other material disputes of fact related thereto.  However, on this record, the undersigned does not need to determine whether or not plaintiff received the rejection because the undersigned finds that actions by prison staff rendered plaintiff's administrative remedies unavailable.  See Hammler v. Davis, 2017 WL 735737, at *10 (E.D. Cal. Feb. 23, 2017) (Albino hearing not warranted when "summary judgment for defendant is precluded not because the evidence is conflicting, but because defendant failed to present evidence that conflicts with plaintiff's evidence of a thwarted attempt

---

complaints must be retained by this agency for at least five years. Id.

15

to submit and exhaust . . . appeal"), findings and recommendations adopted, 2017 WL 1093968 (E.D. Cal. Mar. 23, 2017).

### 2. Were Administrative Remedies Unavailable to Plaintiff?

The actions by prison staff rendered plaintiff's administrative remedies unavailable for the following two reasons.

#### Untimely Response

First, the OOA's third level rejection was untimely.

The Ninth Circuit has not "adopt[ed] a bright-line rule that any delay in a prison's response to an inmate's grievance is sufficient to render administrative remedies unavailable." Fordley v. Lizarraga, 18 F.4th 344, 358 (9th Cir. 2021) (finding grievance process effectively unavailable to prisoner where prison did not respond to emergency grievance) (citation omitted). Rather, the Circuit has explained that "[w]hen prison officials improperly fail to process a prisoner's grievance," the grievance process is effectively "unavailable" to that prisoner, and "the prisoner is deemed to have exhausted available administrative remedies." Andres, 867 F.3d at 1079. Following Andres, the Ninth Circuit reaffirmed that "[d]elays in processing and failures to respond to pending grievances are circumstances signaling the practical unavailability of administrative remedies." Eaton v. Blewett, 50 F.4th 1240, 1246 (9th Cir. 2022). Provided the prisoner waits a reasonable amount of time for a response to a grievance, the failure of prison officials to timely respond "sufficiently exhausts the prisoner's administrative remedies and renders further relief at the administrative level unavailable." Goolsby v. Cnty. of San Diego, 2020 WL 1673036, at *6-7 (S.D. Cal. Apr. 6, 2020), citing, inter alia, see e.g., Rupe v. Beard, No. 2013 WL 2458398, at *16 (E.D. Cal. June 6, 2013) (finding administrative remedies exhausted after prisoner waited twenty days after response was due to file complaint and response was received one week later); Courson v. Cochran, 2009 WL 10725678, at *6 (S.D. Cal. Feb. 19, 2009) ("Prison authorities cannot have it both ways - they cannot obstruct an inmate's pursuit of administrative remedies exhaustion by failing to comply with statutory procedure on the one hand, and then claim that the inmate did not properly exhaust these remedies on the other."), report and recommendation adopted, 2009 WL 10725718 (S.D. Cal. June 24, 2009). Holding

otherwise "would thwart the orderly process Congress envisioned when it required compliance with an agency's internal administrative rules, because inmates -- and courts -- must know when remedies are exhausted." Fordley, 18 F.4th at 358 (citations omitted).

Such reasoning applies to the circumstances presented here. It is undisputed that plaintiff's request for third level review was received on September 4, 2018. However, the OOA did not reject Appeal MCSP-18-02395 until December 13, 2018. Pursuant to CCR tit. 15, § 3084.8(c), responses at the third level of review were to "be completed within 60 working days from the date of receipt by the third level Appeals Chief," except for certain exceptions not applicable here. Id. § 3084.8(c)(3). Omitting weekends and public holidays, the deadline to respond to plaintiff's request for third level review ran on Monday, December 3, 2018, yet the rejection did not issue until December 13, 2018.

Defendants do not address such untimeliness.[12]

Further, given that the third level appeal was rejected due to the omission of a Rights and Responsibility Statement, prison staff did not require additional time. It should be obvious whether or not such statement is included. Thus, while the ten day delay was not indefinite or extraordinary, the undersigned finds it was not justified.

Because the third level response was untimely, and defendants failed to demonstrate otherwise, the undersigned finds that summary judgment is not proper.

Misleading Response

Second, the undersigned further finds the OOA's November 14, 2018 response to plaintiff's inquiry concerning the status of his third level appeal was misleading. The OOA did not inform plaintiff that Appeal MCSP-18-02395 was pending review; rather, the OOA stated: "The attached page(s) lists a summary of your recent appeal history and status of appeals still under review." (ECF No. 51-3 at 31 (emphasis added).) Yet, the attached form confirmed that the OOA had no history of accepted appeals or screened out appeals for plaintiff. (ECF No. 51-3

---

[12] That appeal MCSP-18-02395 was accepted at the second level of review even without the Rights and Responsibility Statement is of no consequence because such acceptance "does not preclude the next level of review from taking appropriate action, including . . . cancellation of the appeal." CCR tit. 15, § 3084.6(a)(5).

at 30.) Such contradictory information is misleading, because it informed plaintiff that the form provided the status of appeals "still under review." But neither the letter nor the attached form informed plaintiff that his Appeal MCSP-18-2395 was still pending review when, in fact, it was actually still pending review.

Similarly, on December 8, 2018, the OOA again responded, informing plaintiff that he had no accepted or screened out appeals. While this memo is technically correct, it does not inform plaintiff that Appeal MCSP-18-02395 remained pending which, when read with the prior OOA response, did not further clarify the matter for plaintiff.

Defendants make much of plaintiff's failure to continue inquiring as to the status of his appeal, noting he stopped all inquiries in December of 2018 and thereafter. But prisoners are not required to continue making inquiries as to the status of inmate appeals, and defendants point to no prison regulation requiring such efforts. And, in any event, the record reflects that plaintiff made multiple inquiries as to the status of his appeal, and although some of his inquiries were misdirected, the OOA provided him conflicting information concerning the pendency of his request for third level review in Appeal MCSP-18-02395. While defendants argue plaintiff's failure to file additional inquiries confirm that the "only logical conclusion is that [plaintiff] did receive the December 13, 2018 correspondence," it is just as logical that plaintiff gave up due to the failure of prison officials to give him a straight answer and equally possible that plaintiff simply did not receive the December 13, 2018 rejection. The fact that plaintiff did not file his federal lawsuit until much later could be based on any number of other factors that do not warrant this court's speculation. In any event, plaintiff filed his pleading after the response deadline ran.

Defendants' argument that plaintiff knows how to use the administrative remedy process (as evidenced by his participation in two group appeals that did proceed all the way to the third level) also fails because the Ninth Circuit has determined that the existence of unrelated appeals from a prisoner does not rebut the prisoner's evidence that administrative appeals were not available on a separate occasion. See Williams v. Paramo, 775 F.3d at 1192 ("This argument is a virtual non-sequitur because it does nothing to rebut Williams's evidence that administrative

////

18

remedies were not available to her at the time she tried to file the relevant grievance and appeal in this case.").

For the above reasons, the undersigned finds that plaintiff's administrative remedies were rendered unavailable, and the motion for summary judgment should be denied.

IV. Conclusion

Viewing the evidence in the light most favorable to plaintiff and drawing all reasonable inferences from the record in his favor, the undersigned recommends that defendants' motion for summary judgment be denied.

In accordance with the above, IT IS HEREBY ORDERED that the Clerk of the Court is directed to assign a district judge to this case; and

Further, IT IS RECOMMENDED that defendants' motion for summary judgment (ECF No. 51) be denied, and defendants be required to file a responsive pleading within thirty days from any district court order adopting the findings and recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: September 5, 2023

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/chri0305.msj.fte